**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   PASSAIC HEALTHCARE
       SERVICES, LLC,                  Chapter 11

                                 Case No.  14-36129 (CMG)

        Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

RIKER DANZIG SCHERER HYLAND & PERRETTI
Curtis M. Plaza, Esq.
Attorneys for Cornerstone Essex Leasing Co., LLC and
        Essex Capital Corporation

BECKER MEISEL, LLC
Stacey L. Meisel, Esq.
David Tomeo, Esq.
Attorneys for McKesson Medical-Surgical Minnesota
        Supply, Inc.

BUCHALTER NEMER
Jeffrey K. Garfinkle, Esq.
Attorneys for McKesson Medical-Surgical Minnesota
        Supply, Inc.

ARENT FOX, LLP
Robert M. Hirsch, Esq.
Attorneys for the Official Committee of Unsecured Creditors

TRENK, DIPASQUALE, ET AL.
Thomas M. Walsh, Esq.
Attorneys for the Debtor

MCELROY, DEUTSCH & MULVANEY
Louis A. Modugno, Esq.
Attorneys for Sequioa Healthcare Services, LLC

**CHRISTINE M. GRAVELLE, U.S.B.J.**

**Introduction**

Creditors, Sequoia Healthcare Services, LLC ("Sequoia") and Essex Capital Corporation

("Essex") (together, "Movants") come before this Court seeking entry of an order revoking the

*pro hac vice* admission of Jeffrey K. Garfinkle, Esq. ("Mr. Garfinkle"), counsel for McKesson

Medical-Surgical Minnesota Supply, Inc. ("McKesson").  After reviewing the written

submissions of the parties and conducting oral argument, and for the reasons that follow, this

Court DENIES the motion.

**Jurisdiction and Venue**

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as

amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is

a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this Court

pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following

findings of fact and conclusions of law.

**Facts and Procedural History**

Debtor, Passaic Healthcare Services, LLC ("Debtor") filed a Chapter 11 bankruptcy on

December 31, 2014 (the "New Jersey Bankruptcy").[1]  McKesson is one of the largest creditors of

Debtor.  On January 5, 2015, local counsel for McKesson filed an application to admit Mr.

Garfinkle *pro hac vice* before the United States Bankruptcy Court, District of New Jersey (the

"Application").  Mr. Garfinkle is a shareholder at the firm of Buchalter Nemer ("Buchalter").  He

---

[1] Two associated businesses, Galloping Hill Surgical LLC and Allcare Medical SNJ LLC, subsequently each filed a
Chapter 11 bankruptcy on January 6, 2015.  By way of a January 8, 2015 order, the three cases were consolidated
for procedural purposes and are jointly administered under Debtor's case number.

is McKesson's primary national bankruptcy counsel and appears throughout the country for

McKesson and its affiliates in that capacity.

Mr. Garfinkle submitted a certification in support of the Application.  In the certification

he stated that he was a member in good standing of the California bar, and has been since 1991.

Additionally, he made the following statement:

> I am not under suspension or disbarment by any court.  Additionally, there
> are no disciplinary proceedings pending against me in any jurisdiction,
> and no discipline has previously been imposed on me in any jurisdiction.
> The Standing Committee for Discipline for the Central District of
> California currently is investigating a referral against me, but has not
> initiated any disciplinary proceedings with respect to that referral.

The certification further affirmed that, upon admission, Mr. Garfinkle would be bound by

the rules of the United States Bankruptcy Court, District of New Jersey, and that he would notify

this Court of any matter affecting his good standing before the bar of any jurisdiction.

No one objected to the Application, and on January 13, 2015 this Court entered an order

allowing Mr. Garfinkle to appear *pro hac vice*.

(a) The June 20, 2014 and August 7, 2014 Orders

The referral to which the Application refers is based upon a June 20, 2014 sanction order

entered by the United States Court for the Central District of California (the "USDC") stemming

from what appears to be complicated litigation involving several California bankruptcy cases

(the "California Bankruptcy Cases").  The USDC sanctioned Mr. Garfinkle for (1) his willful

disobedience of that court's Stay Orders, and (2) his attempt to justify the violation of the Stay

Orders by knowingly presenting a frivolous argument which contradicted the plain language of

the Order. His actions forced the trustee and another interested party, Screen Capital

International Corp. ("SCIC"), in the California Bankruptcy Cases to respond to four motions and

appear for two hearings in addition to those motions.  Mr. Garfinkle was ultimately sanctioned in

the amount of all reasonable costs and fees incurred by the trustee and SCIC in connection with

the four motions and two additional hearings.  That court noted that Mr. Garfinkle and Buchalter

were to be jointly and severally liable for the costs and fees.  It additionally required the parties

to serve the order on the State Bar of California and the Standing Committee on Discipline for

the Central District of California (the "Standing Committee").  Subsequently, by way of an

August 7, 2014 order, the amount of costs and fees was set at $97,000.

Mr. Garfinkle and Buchalter appealed the June 20, 2014 order to the Ninth Circuit.

Subsequent to the filing of the appeal, the California Bankruptcy Cases were dismissed.[2]

Additionally, in a related bankruptcy case in the Southern District of New York the sanctions

awarded against Buchalter, Mr. Garfinkle, and payable to SCIC in the California Bankruptcy

Cases, were waived and released through a global settlement agreement.  That agreement

awarded $21,000 to the trustee in the California Bankruptcy Cases.  The record is unclear as to

how the dismissal of the California Bankruptcy Cases affects the amount payable to the trustee.

The record is similarly unclear as to whether, in light of the dismissal of the California

Bankruptcy Cases and the resolution of the issue of sanctions, the appeal of the June 20, 2014

order is moot.

As noted in the Application, the Standing Committee has begun an investigation into the

referral.  The Standing Committee contacted Mr. Garfinkle prior to Debtor's filing and informed

him that due to the overlap between the members of the Standing Committee and the law firms

involved in the California Bankruptcy Cases, a quorum could not be obtained.  Thereafter, in

February of 2015 a quorum was reached, and the Standing Committee requested a written

response to the June 20, 2014 order from Mr. Garfinkle.  After providing his response in March

2015, nothing further had transpired in the matter as of the filing date of this motion.  The

---

[2] The trustee in that bankruptcy case has appealed the dismissal.

California State Bar has not commenced any action against Mr. Garfinkle in relation to the June 20, 2014 order.

(b) The October 18, 2013 and March 19, 2014 Orders

Not noted in the Application, and prior to the June 20, 2014 order, on October 18, 2013 a California bankruptcy court entered an order sanctioning Buchalter and its client in another matter for contempt of court for violating the terms of a preliminary injunction. A March 19, 2014 order granting a bill of fees in the amount of $20,000 was entered in that case. Both the sanction order and the bill of fees order were against Buchalter and not Mr. Garfinkle individually. This sanction was resolved in the global settlement in the Southern District of New York bankruptcy case referenced above.

The California State Bar made an initial inquiry into the October 18, 2013 and March 19, 2014 orders, at which point Mr. Garfinkle explained that the sanction was against Buchalter and not him individually. He has not received any further communications from the California State Bar.

(c) The New Jersey Bankruptcy

McKesson has taken an active role in the New Jersey Bankruptcy. One of the main issues in the case surrounds lien priority between McKesson, Essex, and Sequoia on certain assets of Debtor. Those issues are the subject of an associated adversary proceeding, Essex Capital Corporation et al. v. Passaic Healthcare Services, LLC et al., Case No. 15-1047 (the "Adversary Proceeding"). Essex and Sequoia have worked together with a certain commonality of interest. Almost uniformly, the positions taken by Essex and Sequoia have been directly adverse to those of McKesson. The litigation between the parties can be characterized as aggressive and contentious. In addition to their claim that the Application contains material

omissions, Movants cite to specific actions of Mr. Garfinkle in the present case to justify the

relief they seek.  Specifically they reference:

- The submission of a verified motion which Movants allege was misleading and only partially verified;
- Failing to advise the Court of material facts regarding representations and documents related to McKesson's security interests and lien position;
- Asserting false claims for conversion against both Essex and Sequoia;
- Disingenuously arguing against the Bankruptcy Court's jurisdiction to hear the Adversary Proceeding regarding lien priority among creditors to the District Court after bringing a motion for relief from stay in the Bankruptcy Court which related to the same issues; and
- Misstatements to the District Court during McKesson's Motion to Withdraw the Reference in the Adversary Proceeding.

The parties briefed the issues and appeared for oral argument on August 4, 2015.

## **Legal Analysis**

(a) Legal Standards

Out of state attorneys are permitted to seek admission *pro hac vice* by application.  D.N.J.

LBR 2090-1.  The Local Rules for the United States District Court of New Jersey ("Local

Rules") provide the specific requirements for those attorneys seeking admission in this

jurisdiction.  D.N.J. L. Civ. R. 101.1(c).  Specifically, in relevant part, the Local Rules require an

applicant for *pro hac vice* admission to make a certified statement that lists each bar to which the

applicant is a member, that the applicant is in good standing in each bar of which he is a

member, that no disciplinary proceedings are pending against the attorney in any jurisdiction,

and that no discipline has previously been imposed on the applicant in any jurisdiction.  D.N.J.

L. Civ. R. 101.1(c)(1).   If discipline has been imposed within the last five (5) years, the

applicant is required to state the date, jurisdiction, nature of the ethics violation, and the penalty

imposed.  Id.  If proceedings are pending, the applicant is required to specify the jurisdiction, the

charges, and the likely time of their disposition.  Id.

Admission *pro hac vice* is a privilege, not a right, and the decision to admit out-of-state

counsel for a particular case is in the sound discretion of the court.  *See* Leis v. Flynt, 439 U.S.

438, 442 (1979); Mruz v. Caring, Inc., 107 F. Supp. 2d 596 (D.N.J. 2000).  Federal courts

generally take a liberal approach in allowing out-of-state attorneys to practice in federal courts of

jurisdictions to which they are not admitted to the bar.  Kohlmayer v. National RR Passenger

Corp., 124 F. Supp. 2d 877, 880 (D.N.J. 2000).  "This trend of liberally granting *pro hac vice*

admission stems from the Supreme Court case of Selling v. Radford, 243 U.S. 46 (1917), which

held that even where an attorney was no longer a member of a state bar, he was not automatically

barred from appearing before the Supreme Court."  Id.  "Liberal admission is also commonly

done as a matter of comity between states."  Id. (citing Leis v. Flynt, 439 U.S. 438 (1979)).

A lawyer admitted *pro hac vice* is within the disciplinary jurisdiction of this Court.

D.N.J. L. Civ. R. 101.1(c)(5).  Additionally, a lawyer admitted to practice *pro hac vice* is also

subject to the Rules of Professional Conduct of the Supreme Court of the State of New Jersey.

N.J. R.P.C. 5.5(c)(2).  One such professional conduct rule is that of showing candor towards the

tribunal, which states that:

> (a)  A lawyer shall not knowingly:
>
> 1.   make a false statement of material fact or law to a tribunal;
>
> ***
>
> 5.   fail to disclose to the tribunal a material fact knowing that the
> omission is reasonably certain to mislead the tribunal, except that it shall
> not be a breach of this rule if the disclosure is protected by a recognized
> privilege or is otherwise prohibited by law.

N.J. R.P.C. 3.3.

Courts are endowed with certain powers to sanction inherent in their authority to

administer justice in cases before them.  *See* Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991);

Eash v. Riggins Trucking, Inc., 757 F. 2d 557, 561 (3d Cir. 1985).  This sanctioning power may

be invoked to regulate the conduct of lawyers appearing before a court, and may be used to

impose sanctions on lawyers who violate the Rules of Professional Responsibility, the Federal

Rules of Civil Procedure, the Local Rules, or the general obligations of practicing attorneys. *See*

Eash, 757 F.2d at 561; Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 161 (D.N.J. 1999).

      Due to the potency of a federal court's inherent power, such power must be exercised

with restraint and discretion. Chambers, 501 U.S. at 44 (*citing* Roadway Express, Inc. v. Piper,

447 U.S. 752, 764 (1980)). "A primary aspect of this discretion is the ability to fashion an

appropriate sanction for conduct which abuses the judicial process." Id. at 44-45. Revocation of

*pro hac vice* admission is a recognized sanction for violation of court orders or disciplinary rules.

Data Systems Analysts, Inc. v. Netplex Group, Inc., 187 F.R.D. 181, 183-84 (D.N.J. 1999)

(*citing* Johnson v. Trueblood, 629 F.2d 302, 304 (3d Cir. 1980)).

      But, revocation of an attorney's *pro hac vice* admission is a harsh sanction that should be

used sparingly, both due to the lasting hardship on that attorney's reputation, as well as the

hardship to the clients, who are deprived of their chosen attorney. *See* Mruz v. Caring, Inc., 166

F. Supp. 2d 61, 70-71 (D.N.J. 2001). Due to the strong interest in the privilege, the Third

Circuit has held that prior to revocation "the attorney be given a meaningful opportunity to

respond to identified charges." *See* Johnson, 629 F.2d at 303. "[A]t a minimum, a violation of

any disciplinary standard applicable to members of the bar of the court would justify revocation

of *pro hac vice* status." Id. at 304.

      Courts in this district have used their inherent powers to revoke attorneys' *pro hac vice*

admissions based on both questionable ethical practices in the case, as well as a pattern of such

behavior. *See* Kohlmayer v. National RR Passenger Corp., 124 F. Supp. 2d 877 (*Pro hac vice*

application denied in the interests of judicial economy due to "pattern of uncivilized behavior . . .

bordering on the unethical, which has resulted in the waste of judicial time in the past."); In re

Complaint of PMD Enterprises, Inc., 215 F. Supp. 2d 519, 531 (D.N.J. 2002) (ethical violations

of attorney, coupled with history of misconduct in the Third Circuit, warranted revocation of that

attorney's *pro hac vice* admission).[3]

Courts in other jurisdictions have revoked *pro hac vice* admissions based on material

misrepresentations or omissions in the *pro hac vice* applications.  *See* United States v. Bennett,

2006 U.S. Dist. LEXIS 70089, 2006 WL 2793170 (D. Haw. Sept. 27, 2006) (pro hac vice

admission revoked where attorney did not disclose suspension in another jurisdiction even when

stayed by pending appeal); United States v. Howell, 936 F. Supp. 774 (D. Kan. 1996)(material

omission appropriate for revocation of attorney's pro hac vice admission for failure to list all

disciplinary and grievance proceedings in application).

(b) Application of Analysis to Case at Bar

Movants request the revocation of Mr. Garfinkle's *pro hac vice* admission on several

grounds.  First, they argue that the Application itself contained material misrepresentations

through its omission of the sanctioning orders in the California Bankruptcy Cases.  Second, they

argue that an alleged pattern of misconduct by Mr. Garfinkle, both in the California Bankruptcy

Cases and this jurisdiction, merits revocation of his admission.  This Court disagrees with both

arguments.

i.       Material Misrepresentations/Omissions

Mr. Garfinkle's Application disclosed the referral against him.  We do not feel that the

brevity with which he described the referral to constitute such a material misrepresentation by

omission so as to support revocation of his *pro hac vice* admission.   Initially, we find

---

[3] The attorney in question in both the Kohlmayer and PMD Enterprises cases was the same person.

"discipline" as referenced in D.N.J. L. Civ. R. 101.1(c) to be a distinct concept from the

sanctions imposed against Mr. Garfinkle in California.

The distinction is highlighted when comparing the Local Rules regarding *pro hac vice*

admission with the more stringent ABA Model Rule (the "ABA Rule") on such admission.  The

ABA Rule requires that an application for admission contain:

> 5. a statement as to whether the applicant . . . (c) has ever been disciplined
> or sanctioned by any court or agency in any jurisdiction, U.S. or foreign,
> including this state.  If so, specify the nature of the allegations; the name
> of the authority bringing such proceedings; the caption of the proceedings,
> the date filed, and what findings were made and what action was taken in
> connection with those proceedings . . .
>
> ***
>
> 7. whether the applicant has been held in contempt by any court in a
> written order in the last [five (5)] years, and, if so:  the nature of the
> allegations; the name of the court before which such proceedings were
> conducted; the date of the contempt order, the caption of the proceedings,
> and the substance of the court's rulings . . .

ABA Model Rule on *Pro Hac Vice* Admission, Appendix A, ¶¶ 5, 7.   Paragraph 5 of the

ABA Rule appears to contemplate "discipline" and "sanction" as two different concepts.  If

sanction were a subset of discipline, it would make the addition of "or sanctioned" in subsection

(c) redundant.  Similarly, the ABA Rule devotes an entirely separate paragraph to contempt

orders.  It is unlikely that this paragraph would be necessary if contempt orders fell within the

definition of discipline.

Ultimately any comparison to the ABA Rule is for illustrative purposes only, as the

District of New Jersey has declined to adopt that rule.  There is nothing to lead us to believe that

the more limited language of the Local Rules is intended to create a more expansive, catch-all

definition of "discipline" in the context of *pro hac vice* applications.  The language of the Local

Rules leads to the exact opposite conclusion.  D.N.J. L. Civ. R. 101.1(c)(1) requires disclosure

of the nature of the ethics violation (for discipline which has previously been imposed) or the

charges against the applicant (for pending proceedings).  The terminology supports the idea that

sanctions are separate from discipline.  A sanction may stem from ethics violations, but it need

not specify a specific violation.  For instance, the June 20, 2014[4] order references willful

disobedience, bad faith, and frivolous filings, but the 15 page order does not cite to a specific

rule of professional conduct which Mr. Garfinkle violated.   Interpreting the rule this way would

require the attorney to speculate and analyze rather than simply report.  That does not seem to be

the purpose of the rule.  By the same token, it would be difficult to articulate the "charge" against

Mr. Garfinkle that stems from the June 20, 2014 order without significant speculation.  The

terms "ethics violations" and "charges" fit far more comfortably within the context of an actual

investigation by a state or federal disciplinary committee.

The June 20, 2014 and August 7, 2014 orders required that notice of the sanctions be

given to the state and federal disciplinary committees in that jurisdiction.  To the extent that

providing notice to those committees can constitute the beginnings of disciplinary action, it

would then be considered a pending proceeding, which would require Mr. Garfinkle to specify

the jurisdiction, the charges, and the likely time of their disposition.  D.N.J. L. Civ. R.

101.1(c)(1).  Mr. Garfinkle did so on the Application by providing the information that there had

been a referral which was in the process of being investigated, and that no additional action had

yet been taken.  There were no charges to report and there was no proceeding from which to

extrapolate a disposition date.  Even in that loose definition of "pending proceeding" he has

satisfied the requirements for a *pro hac vice* application.

---

[4] We agree with Mr. Garfinkle that neither the October 18, 2013 or March 19, 2014 orders sanctioned him
individually, and therefore those will not be discussed further in this subsection.

We have considered the fact that limiting "discipline" in such a manner could potentially

lead to a situation where an oft-sanctioned, unethical attorney may be admitted in this District

despite a less than stellar track record.  Ideally, if an attorney were sanctioned egregiously or

often enough in another jurisdiction the disciplinary committees of that jurisdiction would take

action, thus triggering the additional requirements of D.N.J. L. Civ. R. 101.1(c)(1).

Alternatively, should the courts in this district see such abuse occurring on a regular basis they

may choose to change to rule to the more thorough ABA Rule or some variation thereof.

It is this difference between "sanction" of a finding of contempt and "discipline" that

distinguishes those cases in which a *pro hac vice* admission was revoked for a material omission.

In the Bennett case the attorney had been suspended from practice in another state.  United States

v. Bennett, 2006 U.S. Dist. LEXIS 70089 at *1-2.  However, the suspension was stayed pending

the attorney's appeal, and he was allowed to continue to practice law in that jurisdiction.  Id. at

*10. The court noted that the language of the local rule asked whether the attorney had been

suspended, not whether he was currently unable to practice law.  Id. at *11. Though stayed by

the appeal, the order of suspension was still in existence, thus constituting the misrepresentation.

In this matter, the June 20, 2014 order sanctioning Mr. Garfinkle may still be in effect pending

the appeal, however the global settlement may also render it moot or resolved.  Regardless, it is a

sanction and not a discipline and therefore is a wholly dissimilar situation.

The Howell case is sparser as to details.  That attorney failed to disclose all past

disciplinary proceedings against him on the basis that he was not a member of certain bars which

sanctioned him.  United States v. Howell, 936 F. Supp. 774.  It is important to note that in

Howell, the United States District Court for District of Kansas uses the word "sanction" in

connection with "disciplinary or grievance proceeding," though it does not specify the nature of

those sanctions.  Id. at 775, 776.  The local rules for that court require the disclosure of any

disciplinary or grievance proceeding.  D. Kan. Rule 83.5.4(a) (the "Kansas Rule").  This is in

contrast to our Local Rules, which only reference disciplinary proceedings.  The Kansas Rule

also lacks the additional language regarding disclosure of any disciplinary proceedings, which

informed our analysis of the Local Rules.  Therefore, while considering Howell, we find it to be

of limited persuasive value.

Mr. Garfinkle complied with all applicable local rules in his Application.  He listed each

bar to which he is a member, that he is in good standing in each bar of which he is a member,

that no disciplinary proceedings are pending against him in any jurisdiction, and that no

discipline has previously been imposed on him in any jurisdiction.  Though not necessarily rising

to the level of "discipline" Mr. Garfinkle noted the referral against him.  Despite having notice,

no parties in the case sought any additional information regarding the referral in advance of the

Application's objection deadline.  Only after the matter became contentious between the parties

was this raised as an issue.  As the sanctions from the June 20, 2014 and August 7, 2014 do not

constitute "discipline" for the purposes of D.N.J. L. Civ. R. 101.1(c), and therefore the

Application contained no material misrepresentations or omissions.

ii.      Pattern of Misconduct

To support their allegation that Mr. Garfinkle is unfit to practice in this jurisdiction,

Movants reference misconduct in the California Bankruptcy Cases including contempt, willful

violation of orders of the Court, vexatious litigation, frivolous arguments, gamesmanship, and

bad faith conduct as noted in both the June 20, 2014 order as well as the transcript of the May 27,

2014 hearing in advance of that order.   They compare that behavior to the conduct in this case,

which Movants allege includes unnecessarily multiplying litigation, making misrepresentations

to the Court, shifting representations of facts, and asserting frivolous arguments.  They cite to

numerous specific actions taken by Mr. Garfinkle and McKesson in this case.  Mr. Garfinkle

obviously takes issue with the contempt findings in the California Bankruptcy Cases, as he has

appealed that order.  Additionally, he contests the Movants' characterization of his actions in this

case.

We do not find the conduct of Mr. Garfinkle sufficient to warrant a revocation of his *pro*

*hac vice* admission.  The behavior of the attorney in the two District of New Jersey cases cited

by Movants far exceeds the scope of what is alleged in the matter at bar.  The attorney in those

cases had one disciplinary action against him pending at the time of his application, with no

other history of disciplinary actions.  *See* Kohlmayer v. National RR Passenger Corp., 124 F.

Supp. 2d 877, 878.  However, within the Third Circuit that attorney had at least four separate

trial verdicts set aside, or mistrials declared, due to his conduct at trial, including questionable

ethics and grossly uncivilized behavior, including threatening to kill opposing counsel and

calling him a fat pig.  Id. at 880-81l; In re Complaint of PMD Enterprises, Inc., 215 F. Supp. 519,

524-26.  In PMD Enterprises, the court found that the attorney also had violated three rules of

professional conduct through his actions by having an investigator contact an adverse fact

witness, *ex parte,* and offer to pay that witness to review and organize certain documents related

to a central issue in that case.  Id. at 522-23.

Here, there have been no allegations of grossly uncivilized behavior on the part of Mr.

Garfinkle, and this Court has not observed anything other than behavior befitting a member of

the bar.  The unethical actions allegedly taken by Mr. Garfinkle in this case have either been

raised previously, or are overstated.  For example, Movants allege that Mr. Garfinkle omitted a

material financing agreement in a Motion for Relief from Stay.  Mary Rose,[5] a partner at

Buchalter, certified that she inadvertently omitted that document on an e-mail to McKesson's

---

[5] Ms. Rose is admitted to practice in New Jersey, though she currently has an inactive attorney status.

local counsel.  After learning of the omission, it was immediately rectified.  It is unclear the basis

for Movants seeking sanction against Mr. Garfinkle for an action that another attorney took.

Movants do not question the good faith of Mary Rose.  The majority of the remainder of the

claims involves the legal issues which are presently before this Court and which are still at issue.

Mr. Garfinkle satisfactorily addressed the purpose behind all of the filings in question.

This is a far cry from the Kohlmayer and PMD Enterprises cases, which involved an

attorney who repeatedly and continually was reprimanded by multiple courts in multiple cases to

the level that at least four trials had either verdicts set aside or mistrials declared.  Further, that

attorney was given the opportunity to correct his behavior before such a harsh sanction as

revocation of *pro hac vice* admission was imposed.  The PMD Enterprises court noted that:

> [T]he judges of this District have repeatedly warned [the attorney] that his
> behavior must improve in order to be permitted to practice in this Court.
> His behavior in this matter conclusively demonstrates that he has failed to
> make such improvements and thus, is not entitled to continue to practice
> before this Court.

Id. at 532

There has been no evidence of discipline or sanction or any formal rebuke against Mr.

Garfinkle in this district or circuit.  At oral argument, Movants noted that another bankruptcy

court in this jurisdiction admonished Mr. Garfinkle for not being open with the court.  *See* Case

No. 12-12906, December 2, 2012 Transcript at 53:11-18.  However, that admonition alone, with

nothing more, would not put him in any way "on notice" that his *pro hac vice* admission would

be in peril.  Indeed, neither the Movants, nor the Debtor, nor the United States Trustee, nor any

other party has sought any relief based upon Mr. Garfinkle's conduct in this case.  Rather,

Movants brought this motion only after learning the details of the sanction issues in California.

Nor has this Court taken any action on its own accord.  Despite the Movants alleging multiple

instances of what they deem to be misconduct in this one case, in the absence of any fair warning

to Mr. Garfinkle the revocation of his *pro hac vice* application would be an instance of "one

strike and you're out."  While there may be situations where the conduct of an attorney is so

outrageous and beyond the pale so as to require the revocation of his *pro hac vice* admission as

an initial sanction, this is not an example of such conduct.

To the extent that Movants rely on the California Bankruptcy Cases to establish a pattern

of misconduct sufficient for revocation of Mr. Garfinkle's *pro hac vice* admission, such reliance

is misplaced as the actions taken by the California courts are not sufficient to provide Mr.

Garfinkle with notice that his behavior could result in the loss of privileges to practice law in that

or another jurisdiction.  At its basis, those courts found that Mr. Garfinkle violated court orders.

In this case there has been no allegation that he has done so, and therefore no "pattern" has been

established.

This Court does not seek to downplay the serious allegations against Mr. Garfinkle from

the California Bankruptcy Cases.  A willful violation of court orders, and wasting the time and

resources of the court and colleagues, is frowned upon in every jurisdiction in this country.

Regardless of the wording of the specific local rules of each jurisdiction, being forthright and

disclosing such behavior in advance, whether in an abundance of caution or to fully inform the

record, is always appreciated and recommended by this Court.  We realize suggesting that

attorneys file information in excess of the Local Rules, particularly when that information is

unflattering, is an unappealing proposition.  But, such disclosure allows any potential issues to be

addressed at the time of the application, and additionally allows the applicant to provide context

to the behavior.  Since the filing of the present motion, Mr. Garfinkle has submitted two *pro hac*

*vice* applications in other jurisdictions and has certified that in each application he has fully

disclosed the sanctions pursuant to the ABA Rule.  We encourage him to continue to do so.

Finally, we note that the Movants have requested the harsh sanction of revocation of *pro*

*hac vice* admission versus less severe sanctions.  While we find the request for revocation of Mr.

Garfinkle's *pro hac vice* admission to be a gross overreach for the reasons stated above, we

nonetheless considered whether it would be appropriate to fashion an alternative, less severe

sanction.  We note that this motion has already been publicized on the front page of the New

Jersey Law Journal.  *See* Gialanella, David, California Lawyer's Pro Hac Vice Admission Under

Fire, N.J. Law Journal, June 2, 2015.  As such, Mr. Garfinkle has already been subject to a

measure of negative publicity before this matter could even be adjudicated.

In light of the fact that we do not believe that Mr. Garfinkle made any material

misrepresentations or omissions on his Application, any such lesser sanction would need to be

based on Mr. Garfinkle's actions during the case.  There simply is not enough evidence to

support a sanction.  McKesson, through Mr. Garfinkle, has been an aggressive party in this case.

However, that is their right.  We have seen nothing that crosses the line from aggressive to

abusive.  We decline to impose any lesser sanctions in lieu of the revocation of Mr. Garfinkle's

*pro hac vice* admission.

## Conclusion

For the reasons stated above, the Court DENIES Movants' Motion to Revoke the *Pro*

*Hac Vice* Admission of Jeffrey K. Garfinkle.


Dated: October 8, 2015                                    /s/Christine M. Gravelle
                                                                    United States Bankruptcy Judge